FILED
2016 Aug-15  AM 10:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ANDRE M. TOFFEL, in his capacity as Trustee of the Bankruptcy Estate of NINETEENTH STREET INVESTMENTS, INC.,** | ] ] ] ] ] | |
| **Plaintiff,** | ] | **Case No.: 2:15-cv-01669-KOB** |
| **v.** | ] ] | |
| **NATIONWIDE MUTUAL INS. CO., et al.,** | ] ] | |
| **Defendants.** | ] ] ] | |

**<u>MEMORANDUM OPINION</u>**

This matter is before the court on the "Defendants' Motion to Dismiss" and the Plaintiff's "Motion for Leave to Amend Complaint," both filed on October 9, 2015. (Docs. 9 & 10).

This case began as an Adversary Proceeding in the United States Bankruptcy Court for the Northern District of Alabama. Following this court's withdrawal of the reference from the bankruptcy court (doc. 7), the Defendants moved to dismiss the Plaintiff's Complaint, and the Plaintiff moved to amend his Complaint. Defendants argue that the Plaintiff's Complaint should be dismissed for lack of service of process, untimeliness under the applicable statute of limitations, and for failure to state a claim. Plaintiff, on the other hand, seeks to amend his Complaint by restating his existing claims, adding a party as a Defendant, and adding and deleting claims. Because leave to amend should not be granted where the amendment would be futile, the Plaintiff has acted with undue delay, or the amendment would be unduly prejudicial to the Defendants, the court considers both the Defendant's Motion to Dismiss and the Plaintiff's

1

Motion for Leave to Amend together.

For the reasons set out in this Memorandum Opinion, the court finds that the Defendants'
Motion to Dismiss is due to be GRANTED and that the Plaintiff's Motion for Leave to Amend is
due to be DENIED.

## I.      Procedural History and Facts

In 2004, Nineteenth Street Investments began operating a convenience store at 600 14th
Street in Bessemer, Alabama, known as the 14th Street BP. In approximately October 2004,
Nineteenth sought to purchase general liability coverage and liquor liability coverage from
Nationwide Mutual Insurance Company, Patricia Donalson, and the Pat Donalson Agency – the
Defendants in this action. The Defendants issued an insurance policy, which included liquor
liability insurance coverage, for the premises located at 600 14th Street, Bessemer, Alabama. The
named insured on the policy, however, was an entity known as Sabbah Brothers Enterprises, Inc.
("SBE"), not Nineteenth Street Investments. SBE is a related entity to Nineteenth Street. Ibrahim
Sabbah is the owner, sole shareholder, and director of both SBE and Nineteenth Street. The
Nationwide policy for SBE provided liquor liability coverage in the sum of $1,000,000 for each
occurrence and $1,000,000 in the aggregate. The insurance policy was renewed annually, at least
through April 2008.

On or about May 2, 2007, three teens were injured and another teen died in an automobile
accident. Those teens alleged that the accident was caused by alcohol consumption and that the
14th Street BP had illegally sold the minors alcohol. The injured teens and their representatives
brought four state law suits against Nineteenth Street, SBE, and Sabbah individually. Each of the
lawsuits alleged that Nineteenth, SBE, and Sabbah were responsible for the teens' injuries under

2

Alabama's Dram Shop laws. Each of the lawsuits also alleged that Nineteenth, SBE, and Sabbah were related entities, and that Plaintiffs should be entitled to pierce the corporate veil to hold the corporate entities as well as Sabbah in his individual capacity liable.

Nineteenth Street requested that Nationwide provide it defense and indemnity in each of the lawsuits, pursuant to the terms of the insurance policy for the 14th Street BP. On July 19, 2007, Nationwide sent Nineteenth Street a letter indicating that it would not defend Nineteenth Street in the state court lawsuits. Nationwide explained that after a review, it had determined that "there is no coverage for The Nineteenth Street Investments, Inc. Therefore, Nationwide respectfully disclaims coverage for the claim submitted as to The Nineteenth Street Investments, Inc." (Doc. 9-1, at 16).[1]

During the course of the state court actions, the Plaintiffs offered to settle all claims against Sabbah, SBE, and Nineteenth Street for an amount within the limits of the Nationwide policy. Nationwide refused to pay the settlement demands made against any of the Defendants.

Nineteenth Street Investments filed for Chapter 7 bankruptcy on September 9, 2011. On or about February 8, 2013, the teens in the state court cases received jury verdicts totaling $15,150,000.00.

---

[1] "The district court generally must convert a motion to dismiss into a motion for summary judgment if it considers materials outside the complaint." *Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005). However, the Eleventh Circuit has held that "a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment . . . if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). "'Undisputed' in this context means that the authenticity of the document is not challenged." *Id.*

In the instant case, Nationwide's letter denying coverage of Nineteenth Street's claim is central to Plaintiff Andre Toffel's claim. Additionally, the authenticity of the letter is undisputed. Therefore, the court may properly consider Nationwide's letter without converting the Defendants' Motion to Dismiss into a motion for summary judgment.

On September 6, 2013, Plaintiff Andre Toffel, in his capacity as Trustee of the Bankruptcy Estate of Nineteenth Street Investments, filed an Adversary Proceeding in bankruptcy court against Defendants Nationwide Mutual Insurance Company, Patricia Donalson, and the Pat Donalson Agency. Toffel brought claims for Negligent/Wanton Failure to Procure Insurance Coverage; Breach of Contract; Bad Faith Refusal to Defend, Indemnify and Settle; and Recovery of Property of Estate.

Valrey W. Early, III, who was Toffel's former attorney, executed a Certificate of Service dated September 10, 2013, which indicated that he had mailed summonses to Nationwide, c/o its registered agent CT Corporation System; Patricia Donalson; and the Pat Donalson agency. *See* (Doc. 16-1). Early, however, did not file this Certificate of Service with the bankruptcy court until November 11, 2014.

On November 10, 2014, Valrey Early emailed Defendants' counsel, indicating that, because Defendants had not filed an Answer, he intended to file a Motion for Entry of Default in the Adversary Proceeding. After receiving this email, Defendants' counsel expressed her concern that service had not been perfected, and Plaintiff's counsel indicated that the Certificates of Service had mistakenly not been filed. Early stated that he handed the Certificates of Service to a paralegal to file at the time of service, and she did not do it. Realizing the mistake, Early filed the Certificates of Service on November 11, 2014.

On November 12, 2014, after being alerted to the possibility of a Motion for Default, Defendants' counsel filed in the bankruptcy court a Motion to Dismiss the Adversary Proceeding, making the same arguments that are now before this court. Plaintiff never responded to the Defendants' Motion to Dismiss in the bankruptcy court.

4

Toffel filed a Motion to Withdraw the Reference on September 23, 2015, which this court granted on October 8, 2015. On October 9, 2015, Defendants filed the Motion to Dismiss and Plaintiff filed the Motion for Leave to Amend that are the subject of this Opinion. Those Motions have both been fully briefed.

## II.    Legal Standard

### A.    Motion to Dismiss

A Rule 12(b)(5) motion to dismiss attacks the sufficiency of service of process. Under Federal Rule of Civil Procedure 4(m), "[i]f a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time."[2] The court must, however, extend the time for service if the plaintiff shows good cause for his failure to serve the defendant. Fed. R. Civ. P. 4(m). Federal Rule of Bankruptcy Procedure 7004(a)(1) states that Federal Rule of Civil Procedure 4(m) applies in adversary proceedings.

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)). The Supreme Court explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

---

[2] Rule 4(m) now provides that a defendant must be served within <u>90</u> days; however, at the time the Complaint was filed and allegedly served upon defendants, the 120 day rule was in place.

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting and explaining its decision in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). If the court determines that the well-pleaded facts, accepted as true, do not state a claim that is plausible, the claim must be dismissed. *Id.* at 679.

"A statute of limitations bar is 'an affirmative defense, and . . . plaintiff[s][are] not required to negate an affirmative defense in [their] complaint.'" *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (quoting *Tregenza v. Great Am. Comm. Co.*, 12 F.3d 717, 718 (7th Cir. 1993)). "[A] Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." *La Grasta*, 358 F.3d at 845 (internal citations and quotations omitted).

B.   Motion for Leave to Amend

Federal Rule of Civil Procedure 15 provides that a party may amend his Complaint "once as a matter of course within . . . 21 days after serving it, or . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading . . . ." Fed. R. Civ. P. 15(a)(1). In all other cases, a party must obtain leave of court to amend his Complaint. "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). This "rule contemplates that leave shall be granted unless there is a substantial reason to deny it." *Halliburton & Assoc., Inc. v. Henderson, Few & Co.*, 774 F.2d 441, 443 (11th Cir. 1985).

Substantial reasons justifying the denial of leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the

amendment, futility of amendment, etc. . . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

**III.     Discussion**

      A.     <u>Motion to Dismiss</u>

              1.     Service of Process

The Defendants first argue that the court should dismiss this case because they have not been properly served.

The Defendants make two sets of arguments: one based on Plaintiff's alleged failure to comply with the procedural requirements of Federal Rule of Bankruptcy Procedure 7004 and one based on Defendants' assertions that they did not ever receive the summonses and Complaints that were allegedly mailed to them.

The court finds that the first set of these arguments lacks merit.

Federal Rule of Bankruptcy Procedure 7004(b)(1) provides that service may be made by first class mail upon an individual "by mailing a copy of the summons and complaint to the individual's dwelling house or usual place of abode or to the place where the individual regularly conducts a business or profession." Rule 7004(b)(3) provides that service may be made by first class mail upon a corporation, partnership, or other unincorporated association "by mailing a copy of the summons and complaint to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant."

Defendants argue that service on Nationwide was improper because it was mailed only to

its registered agent CT Corporation System, and Rule 7004(b)(3) provides that service to an agent also requires a copy to be mailed to the Defendant. Defendants misstate the rule. Rule 7004(b)(3) provides that "if the agent is one authorized by statute to receive service *and the statute so requires*," a copy of the summons and Complaint must also be mailed to the Defendant. (emphasis added). Alabama Code § 10A-1-5.31 requires Nationwide to designate an agent for service of process, but does not require that a copy also be mailed to the Defendant. Additionally, Federal Rule of Civil Procedure 4(e)(2)(C) authorizes service upon an agent, but contains no requirement that the Defendant also be served. Accordingly, this argument lacks merit.

Defendants next argue that service on Patricia Donalson was improper under Rule 7004(b)(3) because she is an individual and Rule 7004(b)(3) provides for service by first class mail to corporations. This argument is without merit because service upon individuals by mail is allowed under Rule 7004(b)(1).

Defendants also argue that service on the Pat Donalson Agency was improper because Rule 7004(b)(3) requires service on a corporation, partnership, or other association to be mailed "to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process," and the Certificate of Service for the Pat Donalson Agency does not show that service was mailed to an officer or agent of the agency. While this rule does state that service should be mailed to the attention of an officer or agent, the failure to properly address service to an officer or agent does not negate the effectiveness of service. *See In re Premium Sales Corp.*, 182 B.R. 349, 351 (Bankr. S.D. Fla. 1995) ("It makes little sense to construe [rules relating to service of process] technically when actual notice has

been received; to do so would be inconsistent with the spirit of the federal rules as expressed in Rule 1.") (citations omitted). Had the summons allegedly mailed to the Pat Donalson Agency been delivered, Patricia Donalson would have received the summons regardless of whether the summons was designated to her attention. Accordingly, the court finds that this argument about technical compliance with the statute also lacks merit.

The Defendants next contend that they never received the summonses and Complaints that the Plaintiff's counsel allegedly mailed to them. The court finds merit in this argument.

Defendant Patricia Donalson and Mara Velsaco, the Corporate Operations Manager for CT Corporation System, have offered *signed, sworn* declarations, indicating that they have no record of ever receiving a summons in this matter. *See* (Doc. 9-2). Donalson states that her "routine practice is to forward any legal papers to Nationwide Mutual Insurance Company" and that, had she received a summons in this matter, she "would have immediately contacted Nationwide Mutual Insurance Company and forwarded the documents to it for advice." (*Id.*, at 6). Despite this practice, Donalson contends that she has no record of receiving a summons or forwarding the summons to Nationwide.

Velasco likewise explains that CT Corporation "maintains records of all documents it receives in its capacity as a registered agent for businesses all over the country. These records are made by employees of CT Corp. at or near the time the documents are received by CT Corp." (*Id.*, at 10). CT Corporation was Nationwide's registered agent and "maintain[ed] records of all documents that it received for Nationwide as its registered agent." (*Id.*). Despite keeping these records, Velasco states that CT Corporation has no records of ever receiving a Complaint or

9

summons for Nationwide in this case.

The court recognizes that "[a]n executed return of service is prima facie evidence of valid service which may be overcome only by strong and convincing evidence." *In re Premium Sales Corp.*, 182 B.R. at 351. However, a return of service is typically executed by a process server who can attest that the summons and Complaint were delivered to a particular person on a particular date and time. The return of service is also typically filed at or near the time of service.

The circumstances surrounding Plaintiff's Certificates of Service in the instant case are far weaker than the normal case involving an executed return of service. The Certificates of Service in this case were completed by the Plaintiff's attorney, not by a process server. Although this method of service is an acceptable practice, Plaintiff's counsel did not file the Certificates at or near the time of service; he filed them *fourteen months after* the date on which he allegedly mailed the summonses and Complaints. The court questions whether the late-filed Certificates of Service in this case constitute prima facie evidence of valid service.  However, even if these Certificates do establish prima facie evidence of valid service, the court finds that the Defendants have presented strong and convincing evidence, sufficient to rebut this presumption of effective service.

The circumstances of this case as a whole support the conclusion that the Defendants were not served. First, in signed, sworn statements, the Defendants have explained in detail their normal procedures upon receipt of a summons. These explanations give credence to the conclusion that if the Defendants had been served, they would have some record of receiving the summons.

10

Second, the Defendants are sophisticated business people who are familiar with handling summonses. The Pat Donalson Agency and Pat Donalson are an insurance agency and its owner who have a routine practice for handling summonses. CT Corporation is a company whose sole business purpose is to receive service of process on behalf of its customers. The court finds it unlikely that all of these sophisticated Defendants would have no record of service if they had in fact been served.

Third, the fact that *none* of the three Defendants received the summons and Complaint suggests that the summons and Complaint were not mailed.

Finally, the suspicious circumstances surrounding the filing of the Certificates of Service support the conclusion that the Defendants were not served. The fact that the Certificates of Service executed by Valrey Early were filed *over a year after* the date upon which service was allegedly perfected suggests that perhaps the summonses and Complaints were not actually mailed as indicated in the Certificates of Services.

The court finds that these circumstances considered as a whole constitute strong and convincing evidence that the Defendants were not served. Under Federal Rule of Civil Procedure 4(m), "[i]f a defendant is not served within 120 days after the complaint is filed, the court . . . *must* dismiss the action without prejudice against the defendant or order that service be made within a specified time." (emphasis added).

Because the 120 day deadline for service expired more than two years ago – long before the Defendants filed their Motion to Dismiss in the bankruptcy court and long before this court withdrew the reference from the bankruptcy court –, the court finds that the prejudice caused to the Defendants by the Plaintiff's lack of service cannot be cured by ordering the Plaintiff to now properly serve the Defendants within a specified period of time. The court also finds that the

11

Plaintiff has not shown good cause for his failure to properly serve the Defendants.

Accordingly, the court finds that the Plaintiff's Complaint is due to be dismissed under Federal Rules of Civil Procedure 12(b)(5) and 4(m) for insufficient service of process.

> 2.      Statute of Limitations

Alternatively, even if the Defendants had been properly served, the court finds that the Defendants' Motion to Dismiss is due to be granted because the Plaintiff's claims are barred by the applicable statute of limitations.

In his Complaint, Plaintiff Andre Toffel asserts claims for negligent/wanton failure to procure insurance coverage, breach of contract, and bad faith refusal to defend, indemnify, and settle. The Defendants contend that each of these claims are barred by the statute of limitations. In his proposed Amended Complaint, Toffel no longer seeks to assert a claim for breach of contract. Thus, the breach of contract claim is no longer at issue. However, the court finds that the remaining negligent failure to procure insurance coverage claim and the bad faith refusal to defend claim are untimely under the applicable statute of limitations.

> a.      *Negligent Failure to Procure Insurance*

Under Alabama law, the statute of limitations applicable to negligence claims, including claims for negligent failure to procure insurance coverage, is two years. Ala. Code § 6-2-38; *Bush v. Ford Life Ins. Co.*, 682 So. 2d 46, 47 (Ala. 1996). The statute of limitations period for a negligent procurement claim begins "when a loss that would trigger liability under the policy occurs" and when the insurer notifies the insured that it will not honor his claim. *Id*.

In the instant case, Nationwide informed Nineteenth Street Investments on July 19, 2007 that it would not honor its claim for the loss related to the car accident in the state court law suits

12

against Nineteenth Street. In its July 19, 2007 letter to Nineteenth Street, Nationwide stated in clear terms: "[T]here is no coverage for The Nineteenth Street Investments, Inc. Therefore, Nationwide respectfully disclaims coverage for the claim submitted as the Nineteenth Street Investments, Inc." (Doc. 9-1, at 16).

Thus, the cause of action for Nineteenth Street's negligent failure to procure insurance claim **accrued on July 19, 2007**, when Nationwide informed Nineteenth Street that it would not honor its claim. The statute of limitations period for Nineteenth Street's negligent procurement claim **expired on July 19, 2009**, two years after the claim accrued. Consequently, when Trustee Andre Toffel filed the adversarial proceeding against the Defendants on September 6, 2013, his negligent procurement claim was untimely.

b.      *Bad Faith Refusal to Defend*

Under Alabama law, "'[t]he statute of limitations for bad faith claims arising on or after January 9, 1985, is two years.'" *Jones v. Alfa Mut. Ins. Co.*, 875 So. 2d 1189, 1193 (Ala. 2003) (quoting *ALFA Mut. Ins. Co. v. Smith*, 540 So. 2d 691, 692 (Ala. 1988)); *see also* Ala. Code § 6-2-38. "'The cause of action for bad faith refusal to honor insurance benefits accrues upon the event of the bad faith refusal, or upon the knowledge of facts which would reasonably lead the insured to a discovery of the bad faith refusal.'" *Jones*, 875 So. 2d at 1193 (quoting *Safeco Ins. Co. of America v. Sims*, 435 So. 2d 1219, 1222 (Ala. 1983)). A letter denying insurance coverage should be sufficient to "put a reasonable mind on notice of the *possible existence* of fraud" and, thus, to trigger the running of statute of limitations for a bad faith refusal claim. *Farmers & Merchants Bank v. Home Ins. Co.*, 514 So. 2d 825, 831-32 (Ala. 1987).

In the instant case, Nationwide's July 19, 2007 letter denying coverage was sufficient to

13

put Nineteenth Street on notice of Nationwide's possible bad faith. Nationwide's denial is the event that forms the basis for Toffel's bad faith claim. Therefore, the court finds that the statute of limitations for Toffel's bad faith refusal to defend claim **began to run on July 19, 2007** and **expired on July 19, 2009**. Toffel's bad faith claim asserted in the adversarial proceeding filed on September 6, 2013 was untimely.

c.    *Toffel's Response*

Toffel argues in response that, his claims are not barred by the statute of limitations because Nineteenth Street's claims did not accrue until a final judgment was entered against it in the state court lawsuits.

Toffel contends that the Defendants have failed to recognize the distinction between first-party and third-party insurance cases, and that in third-party insurance cases, the cause of action does not accrue until a final judgment is entered against the insured.

In support of this argument, Toffel cites third-party *failure to settle* cases.[3] In the context of third-party failure to settle cases, Alabama courts have held that "a cause of action arising out of a failure to settle a third-party claim made against the insured does not accrue unless and until the claimant obtains a final judgment in excess of the policy limits." *Evans*, 727 So. 2d at 67.

––––––––––––––––––––

[3] "First-party" insurance claims involve personal or property insurance with a "claim wherein the insured allege[s] that the insurer ha[s], in bad faith, refused to pay a legitimate claim made by the insured on his own policy." *Evans v. Mut. Assurance, Inc.*, 727 So. 2d 66, 68 (Ala. 1999).

"Third-party" failure to settle claims involve liability insurance in "situations where the insurer wrongfully refuses, either negligently or intentionally, to settle his third party claim within policy limits and where, as a result, the insured incurs a judgment against him in an amount in excess of the policy." *Chavers v. Nat'l Sec. Fire. & Cas. Co.*, 405 So. 2d 1, 5 (Ala. 1981).

14

In his original Complaint, Toffel did not assert a failure to settle claim. Rather, Toffel asserted claims for negligent failure to procure insurance and bad faith refusal to defend, indemnify, and settle. Toffel argues, without citing any case law, that the distinction made between first-party and third-party claims in the failure to settle context applies to claims for negligent procurement and bad faith refusal to defend as well. Alabama courts, however, have not pronounced this distinction as broadly as Toffel suggests.

Additionally, this case is distinguishable from the third-party cases that hold that a claim does not accrue until final judgment. For example, in *Evans*, a doctor was sued in a wrongful death action. 727 So. 2d 66. The doctor's malpractice insurer *undertook to represent* him with a reservation of rights in the wrongful death action. The case went to trial, and the jury returned a verdict against the doctor. While the case was on appeal, the malpractice insurer settled the case for an amount in excess of the doctor's $1 million coverage limit. The doctor alleged that his insurer should have settled the case before trial within his $1 million policy limit. No dispute existed in *Evans* as to whether the doctor's claim was covered. *Id.*

In the instant case, however, Nineteenth Street knew that Nationwide did not intend to provide any coverage for its claim or defend it in the state court lawsuits as of the date it sent Nineteenth Street the denial letter, July 19, 2007. Unlike the insurance company in *Evans*, Nationwide did not agree that Nineteenth Street's claim was covered and did not undertake to defend the suits against it.

Moreover, in the typical liability insurance contract, "the insured expressly relinquishes to the insurer the right to control the defense and settlement of any action arising under the contract.

15

The insured's reliance on the abilities and the good faith of the insurer is therefore necessarily at a maximum." *Federal Ins. Co. v. Travelers Cas. & Sur. Co.*, 843 So. 2d 140, 143 (Ala. 2002). When a third-party files a claim against the insured, the insured sends that claim to the insurer, and the insurer accepts coverage and controls the defense and settlement of the insured's case. The insured will not be injured, if at all, until the insurer fails to settle the case within the insured's policy limits.

In the present case, Nationwide never agreed to defend Nineteenth Street in the state court lawsuits. Nationwide did not take control of the defense and settlement of the state court lawsuits. Therefore, the policy concerns implicated in the typical third-party failure to settle case are not present in the instant case. Nineteenth Street was injured, and its cause of action accrued, on the date that Nationwide denied coverage of its claim, even though the full extent of its damages were not known until the state court entered judgments against it. *See Chandiwala v. Pate Constr. Co.*, 89 So. 2d 540, 543 (Ala. 2004) ("A cause of action accrues as soon as the claimant is entitled to maintain an action, regardless of whether the full amount of the damage is apparent at the time of the first legal injury.") (citations omitted). The statute of limitations on Nineteenth Street's claim began to run on the date Nationwide denied it coverage. The third-party failure to settle cases cited by Toffel are inapplicable to the present case.

Therefore, the court finds that Toffel's claims against the Defendants are due to be dismissed because they are barred under the applicable statutes of limitations.[4]

---

[4] The Defendants also assert that Toffel's claims are due to be dismissed because Toffel has failed to state cognizable claims for relief. Because the court finds merit in the Defendants' service and statute of limitations arguments, it does not need to address the Defendants' final argument.

B.     Motion for Leave to Amend

In his Motion for Leave to Amend, Plaintiff Andre Toffel asks the court for leave to amend his original Complaint. In his proposed Amended Complaint, Toffel restates and restructures his existing claims, adds Nationwide Mutual Fire Insurance Company as a Defendant, deletes his breach of contract claim, and adds claims for negligent/wanton failure to settle and equitable reformation.

In determining whether to grant a Motion for Leave to Amend, the court may consider factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. . . . ." *Foman,* 371 U.S. at 182.

Because the court finds that the Defendants' Motion to Dismiss is due to be granted for the reasons stated above, the court additionally finds that an amendment to the Plaintiff's Complaint would be futile. The Plaintiffs' Complaint would still be due to be dismissed pursuant to Federal Rules of Civil Procedure 4(m) and 12(b)(5) for insufficient service of process. More significantly, Toffel's claims that were asserted in his original Complaint for negligent procurement and bad faith would still be barred under the applicable statutes of limitations.

Toffel's new claim for negligent/wanton failure to settle would likewise be barred under the applicable statute of limitations. As discussed previously, Nineteenth Street was injured when Nationwide refused to provide it with coverage. The accrual rule stated in third-party failure to settle claims is inapplicable to this case because Nationwide did not agree to defend Nineteenth

17

Street, and Nineteenth Street never relinquished its control or ability to settle the state court lawsuits. Therefore, the statute of limitations period for Toffel's negligent failure to settle claim would have expired as of July 19, 2009 – two years from the date that Nationwide denied coverage of Nineteenth Street's claim. Toffel's adversary proceeding filed in 2013 was untimely.

As to the newly proposed equitable reformation claim, Toffel argues that the claim is timely, even if the statute of limitations period began to run on July 19, 2007. Toffel contends that equitable reformation actions are subject to a six-year statute of limitations period, and that bankruptcy law provides for equitable tolling of statutes of limitations for two years from the date of the filing of a bankruptcy petition. *See Branch Banking & Trust Co. v. McDonald*, 2:13-CV-000831-KOB, 2013 WL 5719084, at *6 (N.D. Ala. Oct. 18, 2013) (applying six year statute of limitations to equitable reformation of a mortgage); 11 U.S.C. § 108(a) ("If applicable nonbankruptcy law . . . fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of . . . the end of such period . . . or . . . two years after the order for relief."); 11 U.S.C. § 301(b) ("The commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter.").

Nineteenth Street filed for bankruptcy on September 9, 2011. If equitable tolling were to apply to Toffel's equitable reformation claim, then it would be timely because Nineteenth Street filed for bankruptcy before the expiration of the six-year statute of limitations, and the Adversary Proceeding was filed on September 6, 2013, within two years of Nineteenth Street's bankruptcy petition.

The court, however, does not need to decide whether equitable tolling applies and whether Toffel's proposed equitable reformation claim would be timely. Even if the proposed equitable reformation claim is not barred by the applicable statute of limitations, Toffel's Complaint as a whole is still due to be dismissed for insufficient service of process, and Toffel's Motion for Leave to Amend is due to be denied because Toffel has acted with undue delay and because an amendment would be unduly prejudicial to the Defendants, as the court will set out below.

The court finds that Toffel has acted with undue delay in moving to amend his Complaint and in responding to the Defendants' Motion to Dismiss. The Defendants' Motion to Dismiss was filed in bankruptcy court in the Adversary Proceeding on November 12, 2014. Toffel never responded to the Defendants' Motion to Dismiss in the bankruptcy court. When this court withdrew the reference on September 23, 2015 and the Defendants refiled their Motion to Dismiss, Toffel promptly responded to the Defendants' Motion to Dismiss and moved to amend his Complaint in this court. However, Toffel's promptness here does not excuse his lack of diligence and undue delay in the bankruptcy court.

In light of Toffel's undue delay, the court also finds that it would be unduly prejudicial to the Defendants to allow Toffel to amend his Complaint at this stage. Toffel allowed this Adversary Proceeding to sit stagnant in the bankruptcy court for two years. Toffel filed the Adversary Proceeding in September 2013. Toffel took no further action until November 2014, when his attorney emailed Defendants' counsel to tell her that he would moving for entry of default. When Defendants filed a Motion to Dismiss on November 12, 2014, Toffel took no action again until he moved to withdraw the reference almost a year later. It would be unduly

prejudicial to the Defendants to wipe Toffel's slate clean and to allow Toffel to file an Amended Complaint when he has not shown diligence in pursuing his claims thus far.

Therefore, because the court finds that Toffel's proposed amendment would be futile, that Toffel has acted with undue delay, and that an amendment would be unduly prejudicial to the Defendants, the court will DENY Toffel's Motion for Leave to Amend.

## IV.   Conclusion

As stated in this Opinion, the court finds that Plaintiff Andre Toffel's Complaint is due to be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process and Federal Rule of Civil Procedure 12(b)(6) for untimeliness under the applicable statutes of limitations. The court will, therefore, GRANT the Defendants' Motion to Dismiss and will DISMISS this action WITH PREJUDICE.

The court additionally finds that Toffel has acted with undue delay and that his proposed amendment would be futile and unduly prejudicial to the Defendants. Accordingly, the court will DENY Toffel's Motion for Leave to Amend his Complaint.

The court will enter a separate Order along with this Opinion.

DONE and ORDERED this 15th day of August, 2016.

_Karon O. Bowdre_

KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE

20